**REVERSE AND RENDER and Opinion Filed December 7, 2018**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00033-CV

**CITY OF DALLAS, Appellant**
**V.**
**BLANCA K. HERNANDEZ-GUERRERO, MARIA MARTINEZ, INDIVIDUALLY, AS NEXT FRIEND TO E.H. AND J.H., MINORS, ROSEMARY AND SEFERINO RODRIGUEZ, Appellees**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-04828**

## MEMORANDUM OPINION
Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Bridges

The City of Dallas appeals the trial court's order denying its plea to the jurisdiction in the underlying car wreck involving a marked squad car. In three issues, the City argues the trial court erred in denying its plea to the jurisdiction, the City is immune from suit because its officer is entitled to official immunity, and the City is immune from suit because its officer was responding to an emergency. We reverse the trial court's order and render judgment that appellees take nothing on their claims.

In April 2016, Blanca Hernandez-Guerrero filed her original petition in which she alleged she was a passenger in a vehicle that was struck by the unknown driver of a city-owned police squad car. Hernandez-Guerrero alleged claims of negligence, injury by motor vehicle, and

respondeat superior. In May 2016, the City filed an answer in which it asserted Hernandez-Guerrero's claims concerned a governmental function, and the limited waiver of governmental immunity did not apply to claims arising from the action of a governmental employee while responding to an emergency call. In addition, the City argued its employee would be entitled to official immunity since he was performing a discretionary function within the scope of his employment and acting in good faith. Because its employee was entitled to immunity, the City argued, it was also immune.

In January 2017, the trial court entered an order consolidating Hernandez-Guerrero's claims with the claims of the other appellees bringing legal actions arising out of the accident. In September 2017, the City filed a plea to the jurisdiction challenging the trial court's exercise of subject-matter jurisdiction over appellees' claims against the City. The City alleged that, on December 21, 2014, Dallas police officer Antwan Dunn was dispatched to an emergency call at a Group Home where a man stole a purse, threatened to kill staff and residents, and was potentially armed with a knife. Dunn activated his emergency lights and siren and proceeded to the location in "Code 3" status. Dunn drove north on North Jim Miller Road and approached the intersection at Lake June Road, where the traffic light was red. Dunn applied his brakes and slowed to clear the intersection, and he proceeded when he believed the intersection was safe to enter. As Dunn proceeded through the intersection, a vehicle in which Hernandez-Guerrero was a passenger collided with Dunn. The dash camera video from Dunn's vehicle showed his emergency lights and siren were engaged for five minutes before he approached the intersection, and at least thirteen vehicles pulled over for him.

The City asserted its immunity from suit was based on Dunn's entitlement to official immunity. The City argued Dunn was performing a discretionary duty, acting within the scope of his authority, and acting in good faith. The plea to the jurisdiction was supported by Dunn's

–2–

affidavit in which he described the circumstances of the accident and explained his actions and perception of the urgency of the situation and the risks involved.

In response to the City's plea to the jurisdiction, appellees argued Dunn did not come to a complete stop at the intersection despite the fact that Dunn's training for responding to Code 3 emergencies required a complete stop at red light intersections. Instead, Dunn was traveling at twenty-one miles per hour when he entered the intersection. Dunn received a letter of reprimand stating he violated City policy when he was "involved in an on-duty motor vehicle accident that was classified as PREVENTABLE." Plaintiffs argued Dunn did not act in good faith because the letter of reprimand showed no reasonable person in Dunn's place could have thought the facts were such that they justified Dunn's actions. Plaintiffs acknowledged Dunn was responding to an emergency but argued Dunn was "obliged to show appropriate regard for others and avoid reckless conduct while doing so." Plaintiffs alleged Dunn failed to operate his vehicle with appropriate regard for the safety of all persons and demonstrated reckless disregard for the safety of others by ignoring the requirements of his emergency response training and the City's policies and procedures when he traveled without stopping at the intersection on a red signal light. In December 2017, the trial court denied the City's plea to the jurisdiction, and this appeal followed.

In its first issue, the City argues the trial court erred in denying its plea to the jurisdiction. Specifically, the City argues it is immune from suit as a result of Dunn's official immunity.

Immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject matter jurisdiction and whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law. *Id.* at 226. Therefore, we review de novo a trial court's ruling on a jurisdictional plea. *Id.*

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. *Id.* Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

This standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Id.* The standard allows the state in a timely manner to extricate itself from litigation if it is truly immune. *Id.* After the state asserts and supports with evidence that the trial

–4–

court lacks subject matter jurisdiction, the plaintiffs are required, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue. *Id.* A summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradiction, and could have been readily controverted. TEX. R. CIV. P. 166a(c); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 698 (Tex. App.—Austin 2005, no pet.).

When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. *Miranda*, 133 S.W.3d at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

Official immunity is an affirmative defense. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465 (Tex. 1997). A governmental employee has official immunity for the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *Id.* at 466. A court must measure good faith in official immunity cases against a standard of objective legal reasonableness, without regard to the employee's subjective state of mind. *Id.* Good faith depends on how a reasonably prudent officer could have assessed the need to which an officer responds and the risks of the officer's course of action, based on the officer's perception of the facts at the time of the event. *Id.* at 467 (applying *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994) (good faith balancing test in context of emergency response case). The "need" aspect of the test refers to the urgency of the circumstances requiring official intervention. *Id.* In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and

what alternative courses of action, if any, are available to achieve a comparable result. *Id.* The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident could prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer. *Id.*

Here, Dunn's affidavit stated he understood that, in making discretionary decisions during emergency response calls, he must weigh the need to urgently respond to a potentially life threatening emergency against the risk involved to the general public when responding to the emergency. Based on his law enforcement training and experience in responding to emergency calls, Dunn understood that "Disturbance Emergency" calls, prioritized as Code 3 emergencies, require an immediate response because victims could be in imminent danger, and the presence of officers may be necessary to prevent serious bodily injury to persons at the scene.

Dunn's affidavit stated that, when he proceeded through the intersection after slowing down and seeing that the intersection was clear of traffic, he believed in good faith that the need to get to the scene of the emergency call outweighed the perceived minimal risk of an accident. Dunn recognized that there is some risk when an officer decides to proceed through an intersection on a red light. Dunn slowed down from 73 to 47 to 21 miles per hour as he approached the intersection. Given the dry condition of the roadway at the time and the fact that the vehicles he observed were stopped in the eastbound and westbound lanes of traffic, Dunn's emergency lights and siren were activated, and Dunn had slowed down prior to entering the intersection, Dunn did not perceive that proceeding through the intersection would cause any danger to any other driver close to him.

Dunn's affidavit stated that, considering the above factors, the potential danger posed by proceeding through the intersection was far less than the danger posed to the potential victims at the location of the reported emergency disturbance. Given that Dunn had been dispatched through the 9-1-1 system to respond and was expected to respond urgently to provide assistance to the victims at the scene, Dunn had no other reasonable alternative but to proceed through the intersection in the manner in which he proceeded. He did not engage in conduct that he believed would pose a likelihood of serious injury to anyone. Dunn stated he was acting in good faith and within the scope of his discretionary duty as a Dallas police officer. Dunn stated his actions were reasonable in light of the circumstances, and any reasonably prudent police officer under the same or similar circumstances could have believed that Dunn's actions were justified.

In their brief, appellees argue the City failed to prove that it was entitled to judgment as a matter of law. Appellees argue they raised a factual dispute as to whether Dunn acted recklessly or in violation of the Texas Transportation Code, defeating jurisdictional immunity, and as to whether Dunn acted in good faith, defeating official immunity. Specifically, appellees argue the City relies entirely on Dunn's affidavit to show he slowed "as necessary for safe operation" at the intersection. Appellees argue Dunn knew he was supposed to completely stop at the intersection and look both ways, he was placed at fault by the City, and he received a reprimand for violating City policy. In totality, appellees argue, this evidence raises a fact issue as to whether Dunn was reckless or acted with conscious indifference. Further, appellees argue Dunn's receipt of a letter of reprimand indicates other Dallas police officers found Dunn's actions to be unjustified and constitutes evidence of a lack of good faith.

Section 546.001(2) of the transportation code provides that the operator of an emergency vehicle may proceed past a red or stop signal or stop sign after slowing as necessary for safe operation. TEX. TRANSP. CODE ANN. § 546.001(2). The fact that a collision occurred does not

amount to a showing that an officer violated the statute and is insufficient to raise a genuine issue of material fact as to whether the officer acted recklessly. *See Tex. Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 842 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.); *see also City of Laredo v. Varela*, No. 04–10–619–CV, 2011 WL 1852439, *3–5 (Tex. App. —San Antonio May 11, 2011, no pet.) (mem. op.) (holding officer's failure to adhere to policy requiring emergency vehicles to come to complete stop and failure to remember looking both ways before entering intersection did not raise fact issue as to whether officer acted in conscious indifference to or reckless disregard for safety of others).

A police officer's own affidavit may establish good faith. *City of La Joya v. Herr*, 41 S.W.3d 755, 761 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (citing *Barker v. City of Galveston*, 907 S.W.2d 879, 888 (Tex. App.—Houston [1st Dist.] 1995, writ denied)). An officer's good faith is not rebutted by evidence that he violated department policy. *City of Fort Worth v. Robinson*, 300 S.W.3d 892, 900 (Tex. App.—Fort Worth 2009, no pet.) (citing *Johnson v. Campbell*, 142 S.W.3d 592, 596 (Tex. App.—Texarkana 2004, pet. denied)).

The record shows the need to which Dunn was responding was a potentially life threatening emergency at a Group Home. Dunn slowed at the intersection, and he believed in good faith that the need to get to the scene of the emergency call outweighed the perceived minimal risk of an accident. The road was dry, the vehicles Dunn observed were stopped in the eastbound and westbound lanes of traffic, Dunn's emergency lights and siren were activated. Thirteen other vehicles had stopped in response to the emergency sirens and lights. Dunn did not perceive that proceeding through the intersection would cause any danger to any other driver close to him. Dunn recognized that there is some risk when an officer decides to proceed through an intersection on a red light. However, the potential danger posed by proceeding through the intersection was far less than the danger posed to the potential victims at the location of the reported emergency

disturbance.  Under the facts and circumstances of this case, we conclude appellees failed to raise a factual dispute as to whether Dunn acted recklessly or in violation of the Texas Transportation Code.  *See Sparks*, 347 S.W.3d 834 at 842; *Varela*, 2011 WL 1852439 at *3–5.  Further, we conclude the evidence conclusively established Dunn acted in good faith.  *See Wadewitz*, 951 S.W.2d at 465-67.  Accordingly, the trial court erred in denying the City's plea to the jurisdiction.  We sustain the City's first issue.  Because of our disposition of the City's first issue, we need not address the City's remaining issues.

We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment that appellees take nothing on their claims.


/Molly Francis/
DAVID L. BRIDGES
JUSTICE


180033F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-18-00033-CV     V.

BLANCA K. HERNANDEZ-GUERRERO,
MARIA MARTINEZ, INDIVIDUALLY
AND AS NEXT FRIEND TO E.H. AND
J.H., MINORS, AND ROSEMARY AND
SEFERINO RODRIGUEZ, Appellees

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-04828.
Opinion delivered by Justice Bridges.
Justices Francis and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the trial court's order denying the City of Dallas's plea to the jurisdiction is **REVERSED** and judgment is **RENDERED** that:

Blanca K. Hernandez-Guerrero, Maria Martinez, individually and as next friend of E.H. and J.H., minors, and Rosemary and Seferino Rodriguez take nothing on their claims against the City of Dallas.

It is **ORDERED** that appellant City of Dallas recover its costs of this appeal from appellees Blanca K. Hernandez-Guerrero, Maria Martinez, individually and as next friend of E.H. and J.H., minors, and Rosemary and Seferino Rodriguez.

Judgment entered December 7, 2018.